## PENDLETON *against* BUTTON.

October 19.   In setting off land on execution, the creditor appointed an appraiser, who was
the next justice of the peace, and on the neglect of the debtor, that person,
in his capacity of justice of the peace, appointed two other appraisers, to
join with him in the appraisement.   Held, that the appointments so made
were valid, and the appraisers were competent to perform the duty assign-
ed them.

If it appear, from the return of the officer, that the appraisers were indifferent
freeholders, it is sufficient; a certificate of that fact, from the justice of the
peace who made the appointment, being unnecessary.

Where the return of the officer, after having named the persons appointed ap-
praisers, stated, that "the aforesaid three indifferent freeholders," apprai-
sed the land; this was held to be a sufficient statement of the fact, that such
appraisers were indifferent freeholders.

The appointment of two appraisers, by a justice of the peace, may be made,
on the *neglect* of either party to choose one; and the absence of that party
from the state, is, *prima facie,* sufficient to dispense with notice to him.

Appraisers may discharge their duty, by viewing, without going upon, the
land.

The acknowledgment of a deed, must appear upon the deed, and cannot be
proved by parol evidence.

Evidence that a levying creditor, at the time of the levy, had knowledge of a
previous conveyance to a third person, void through defect of acknowledg-
ment, is inadmissible to defeat or postpone such creditor's title.

THIS was an action of ejectment.

On the trial, the plaintiff claimed title to the demanded pre-
mises, by virtue of the levy of an execution, in his favour,
against *Thomas Stewart* and *Shapley Morgan.* The officer's
return of his proceedings, so far as it is material in this case,
is as follows: " *New-London* county, *April* 22, 1816. I, with
this execution, demanded payment of the sum due therein, and
my fees, at the usual place of abode of the debtor, *Thomas
Stewart,* and also at the last usual place of abode of the debtor,
*Shapley Morgan,* in this state; and for want of payment thereof,
and by direction of *Nathan Pendleton,* Esq. the creditor in said
execution, I, on the 30th day of *April,* 1816, levied the same
on one seventh part, in common and undivided, of a farm or
tract of land, [describing it] containing, by estimation, about
160 acres; and said *Pendleton* chose *Jonah Witter,* of *Preston,*
an appraiser; and the debtor, *Shapley Morgan,* being out of
this state, I applied to *Jonah Witter,* Esq. the next justice of

the peace for said county, to appoint two appraisers, to join the appraiser chosen by said creditor, to appraise the land whereon said execution had been levied ; and *Jonah Witter,* Esq. justice of the peace for said county, thereupon appointed *Elisha Crary* and *Isaac Avery,* both indifferent freeholders of said *Preston,* appraisers ; and *Jonah Witter,* Esq. justice of the peace for said county, administered the oath, by law provided for appraisers of land, taken on execution, to the said *Elisha Crary* and *Isaac Avery,* and *Jeremiah Halsey,* Esq. justice of the peace for said county, administered the oath aforesaid, to *Jonah Witter,* Esq.; and the aforesaid three indifferent freeholders, thus appointed, and sworn, according to law, did, after viewing the aforesaid farm, or tract of land, appraise," &c. *Jonah Witter,* mentioned in the officer's return, as the appraiser chosen by the creditor, was the justice of the peace, and the same person, who afterwards appointed the other two appraisers, and who administered the oath to them.

The defendant contended, that the levy and proceedings on the execution, vested no title in the plaintiff, because the officer did not notify *Shapley Morgan,* at his usual place of abode, in *Preston,* nor give him any opportunity, to choose an appraiser ; nor did it appear, by the return and proceedings of the officer, that *Morgan* neglected, or refused to choose an appraiser, or had an opportunity so to do ; because it did not appear, that the appraisers ever went or entered upon the land ; and because *Witter,* after he was chosen an appraiser, by the creditor, did, as justice of the peace, appoint *Crary* and *Avery* as appraisers, to be associated with him. The judge overruled these objections, and decided, and instructed the jury, that the return and proceedings were sufficient to vest in the plaintiff, the right and interest of *Morgan* in the premises.

The defendant, claiming title as tenant, under *Seth Stoddard,* offered in evidence, in support of *Stoddard's* title, a deed from *Shapley Morgan* to him, dated the 29th day of *November,* 1815 ; to which the following certificate was subjoined : " *New-London* county, ss. *Griswold, November* 29th, 1815. Personally appeared *Shapley Morgan,* signer to the above and within written instrument      to be his free act and deed, before me, *Alexander Stewart,* Justice of Peace." The plaintiff objected to the admission of this deed, on the ground, that

New-London, it had not been acknowledged ; contending, that the certificate
October, of justice *Stewart,* did not conduce to prove an acknowledg-
1820. ment. The judge, being of that opinion, rejected the deed.

Pendleton
*v.*
Button.

The defendant then introduced justice *Stewart,* as a witness,
to prove, that *Shapley Morgan* did, in fact, appear before him,
at *Griswold,* on the 29th day of *November,* 1815, and did then
and there acknowledge the instrument in question, to be his
free act and deed. To the admission of this evidence, the
plaintiff objected, contending, that no parol evidence was ad-
missible, to prove the acknowledgment of the deed. The
judge was of opinion, that this objection was well founded, and
excluded the evidence offered.

The defendant then offered the deed in evidence, accompa-
nied with proof, that the plaintiff had knowledge of the con-
veyance from *Morgan* to *Stoddard,* at the time of the levy of
the execution. To the admission of this evidence, the plain-
tiff also objected ; and the judge decided, that notwithstand-
ing such knowledge, the deed was inadmissible.

The plaintiff having obtained a verdict, the defendant mo-
ved for a new trial, on the ground, that the several decisions of
the judge, before stated, were erroneous.

*Gurley* and *Brainard,* in support of the motion, contended,
1. That *Witter* could not, in the proceedings under the exe-
cution, act in the double capacity, of the creditor's appraiser,
and of a justice of the peace, to appoint the other two apprai-
sers. In the first place, the functions are distinct in their na-
ture ; and cannot, under any circumstances, be united in the
same person. It is like the same person's exercising the func-
tions of a select-man, in binding out children, and of a justice
of the peace, in sanctioning such binding-out ; which, it has
been decided, cannot be done. So, it has been decided in
*Massachusetts,* that a justice of the peace, who takes the ack-
nowledgment of the parties to a rule of reference, cannot be
one of the referees. *Drew* v. *Canady,* 1 *Mass. Rep.* 158.
Secondly, this union of functions, is repugnant to the object of
the law ; which is to produce a counterpoise of bias. As the
creditor has, by law, an opportunity to select an appraiser,
whose bias is in his favour ; a similar indulgence is given to
the debtor ; if he neglects, however, to avail himself of it, the
selection is to be made by one, who is, at least, free from any

bias *against* him. To allow the creditor, under any circumstances, to select his friend for an appraiser, and that friend to appoint the other appraisers, would be to give him an advantage, equally opposed to the policy of the law, and the principles of justice.

2. That a certificate from *Witter*, that he appointed indifferent freeholders, and administered the oath to them, was necessary, to render the proceedings, under the execution, regular and complete, so as to transfer a title to the creditor. These facts, if they existed, must have been within his immediate knowledge; and related exclusively to his official duty: it therefore belonged to him, and not to the officer, to certify them.

3. That the levy was defective, inasmuch as it does not appear, from the officer's return, that one of the appraisers, *viz. Witter*, was an indifferent freeholder. This is an indispensible requisite.

4. That the debtor must have had an opportunity to appoint an appraiser, and there must have been a voluntary neglect on his part, before a justice of the peace can make the appointment. In this case, no notice was given to *Morgan*, and no refusal, or voluntary neglect, on his part, is shewn. Nor can such neglect or refusal, be inferred from his being out of the state, as he might have left an authorized agent within the state. *Eddy* v. *Knap*, 2 *Mass. Rep.* 154. *Whitman* v. *Tyler* & al. 8 *Mass. Rep.* 284.

5. That the appraisers ought to have gone upon the land, to appraise it. A contrary practice, is altogether unsafe and irregular. *Tate* & al. v. *Anderson*, 9 *Mass. Rep.* 95.

6. That parol evidence was admissible, to shew, that the deed was, in fact, duly acknowledged. No statute or rule of law, requires, that the acknowledgment of a deed, should be in writing. The invariable practice is otherwise. After the execution of the deed, the grantor acknowledges it *viva voce.* The deed is then complete, so far as the acknowledgment is concerned. To perpetuate the fact of acknowledgment, the magistrate makes a memorandum, or certificate, of it, at the foot of the deed; but this is no part of the acknowledgment itself. Acknowledgment and delivery, are equally matters *in pais;* and both may be proved, like other matters *in pais.*

*New-London, October, 1820.*

Pendleton
*v.*
Button.

*New-London,*
*October,*
*1820.*

Pendleton
*v.*
Button.

7. That evidence of the plaintiff's knowledge, at the time of the levy, of the conveyance from *Morgan* to *Stoddard*, ought to have been received. The object of acknowledgment and recording, is to give notice of the grantee's right. But if a creditor has, in fact, all the notice, which acknowledgment and recording could furnish, he ought to stand on the same ground, as though they had taken place. His subsequent levy, is a fraudulent act. *Mass. Dig.* 170. *pl.* 4.

*Goddard* and *C. Perkins*, contra, contended, 1. That the appointment of two appraisers, by a justice of the peace, who had been designated by the creditor, as one of the appraisers, was unexceptionable. This designation created no interest; and the law will not presume, that it produced any bias. Besides, the appointment is a mere ministerial act. *Fox* v. *Hills*, 1 *Conn. Rep.* 295. Admitting, then, that the justice might have had a bias on his mind; yet, if he in fact appointed indifferent freeholders, as the return shows that he did, the law is satisfied.

2. That the officer's return, is the regular and proper evidence of the appointment.

3. That it appears, from the return, that the land was set off, by " the aforesaid three indifferent freeholders ;" of whom *Jonah Witter* was one.

4. That the return shows a *neglect*, on the part of the debtor, to appoint an appraiser; which is sufficient to authorize an appointment by a justice of the peace. It is unimportant what was the *reason* of such neglect. The statute is silent as to *notice*.

5. That no law requires the appraisers, to go upon the land. They are not to deliver possession.

6. That the statute has made the grantor's acknowledgment, before a magistrate, an essential part of the deed; requiring the entire deed to be in writing. Besides, this point must have been decided in *Stanton* v. *Button*, 2 *Conn. Rep.* 527.; for if the acknowledgment, in that case, could have been proved by parol, then the deed ought to have gone to the jury.

7. That the plaintiff's knowledge of the transaction between *Morgan* and *Stoddard*, could be of no avail. The only fact necessary for the plaintiff to ascertain, was, whether the

title to the land had, or had not, been transferred.    If it had not been transferred, but remained in his debtor, he might well take it.

*New-London,*
October,
1820.

Pendleton
*v.*
Button.

HOSMER, Ch. J.    The questions arising in this case, relate entirely to the title of the demanded premises.

The first objection made, is to the appointment of appraisers of the land, set off on execution.    *Jonah Witter* was a justice of the peace, and having been chosen by the creditor, to appraise the property levied on, he, on the neglect of the debtor, appointed, and gave oath to *Crary* and *Avery,* the other appraisers.    It is contended, that, by these facts, the persons named became interested, or, at least, that their minds were subjected to a bias, which disqualified them from becoming appraisers.    For this objection, there is no imaginable foundation : the cause is too powerless, to produce the effect supposed.    It must be admitted, that a referee cannot, by any act of his own, give himself jurisdiction in a cause which he is to hear and determine ; and this point was adjudged, by the supreme court of *Massachusetts,* in *Drew* v. *Canady,* 1 *Mass. Rep.* 158.; but the decision has no bearing on the point now under consideration.

The justice of the peace has not certified, that he appointed indifferent freeholders, and administered the oath ; and this is the second objection made.    It was not necessary, that the certificate alluded to, should have been given.    The return of the sheriff, is the usual proof of these facts, and all that is requisite.    The act of the justice, in appointing and swearing an appraiser, implies that he is indifferent and unexceptionable ; and the officer is authorized to certify the facts, which, until the contrary is evinced, are deserving of full credit.    In the state of *Massachusetts,* a similar determination, upon a statute expressed substantially like ours, has been made.    " The statute requires, that the doings on the execution shall be returned by the sheriff.    If he certify, that the appraisers were duly chosen, or appointed, and sworn, and that they performed the duty assigned them, it is sufficient." *Williams* v. *Amory,* 14 *Mass. Rep.* 28.

This return of the sheriff on the execution, speaking of the appraisers, declares, that the aforesaid three indifferent freeholders, after carefully viewing the land, appraised it ; and this meets and prostrates an objection made, that it does not

*New London,*
*October,*
*1820.*

Pendleton
*v.*
Button.

appear, that *Jonah Witter* was a freeholder. Although he is not individually described as being such; yet this fact results, by fair construction, and inevitable inference.

The statute regulating the levy of executions, provides, that each party may choose an indifferent freeholder, to appraise the land levied on, and " if either party neglect to choose," the officer may apply to the next justice, to supply the deficiency. *Shapley Morgan* was not requested to appoint an appraiser, and from the return of the sheriff, it appears, that " he was out of the state;" in consequence of which, the officer applied to a justice, who made the appointment. This proceeding was regular, as the absence of *Morgan* rendered notice to him impossible, and was, *prima facie*, sufficient to warrant the omission to apply at his dwelling.

The appraisers did not go upon the land appraised; nor was it legally requisite that they should. They were bound to appraise it, at its true value, and, for this purpose, to attend to the necessary means of ascertaining it; but this may be, and undoubtedly was, effected, by *viewing* the land. They were not required to enter upon the property, and take possession.

The defendant proposed to prove title to the premises demanded, to be in one *Seth Stoddard,* and to this end offered in evidence a deed, which had never been acknowledged in writing, with accompanying testimony, that a parol acknowledgment was actually made. This evidence was rejected; and most correctly. It is provided by statute, that no deed shall be accounted complete in law, to convey real estate, but such as is written, witnessed, *acknowledged*, and recorded. *Tit.* 142. *c.* 1. *s.* 7. The acknowledgment, to be recorded, must, necessarily, be in writing; and such is the invariable practice. To the record all men recur, for the purpose of ascertaining the title of lands; and to satisfy the enquiry, a written acknowledgment is indispensibly necessary.

If the execution creditors knew, that the deed had been acknowledged, but that neither certificate nor entry had been made of this fact, they likewise knew, that *Stoddard* had no title, and that there was no impediment against the legal levy of their execution.

I am of opinion, that a new trial ought not to be granted.

The other Judges were of the same opinion.

New trial not to be granted.